UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| JTH TAX, LLC f/k/a JTH TAX, INC. d/b/a LIBERTY TAX SERVICE,<br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>JEK YONG; SINGA TAX AND FINANCIAL SERVICES CORP. and ABC TAX AND ACCOUNTING CORP.,<br>　　　　　　　Defendants. | Case No.: |

## **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff JTH Tax LLC f/k/a JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") alleges for its Verified Complaint against Defendants Jek Yong ("Yong"), Singa Tax and Financial Services Corp. ("Singa Tax") and ABC Tax and Accounting Corp. ("ABC Tax") (collectively, "Defendants"), as follows:

## **NATURE OF THE ACTION**

1.　　Singa Tax is a former Liberty franchisee that has breached its franchise agreement with Liberty ("Franchise Agreement") by using Liberty's trade secrets to unlawfully compete in open and direct violation of a two-year, 25-mile non-competition provision set forth in the Franchise Agreement.

2.　　Yong, Singa Tax's President and a guarantor of the Franchise Agreement, is intentionally and deceptively operating ABC Tax to solicit Liberty's clients using Liberty's trade secrets for her benefit, to the detriment of Liberty.

3.　　Defendants' unlawful competition has resulted in, and will continue to result in, irreparable harm to Liberty's brand, reputation, goodwill and franchise system. If Defendants are not ordered to cease their unlawful competition, Liberty will continue to suffer irreparable harm

1

to its brand and franchise system that cannot be corrected by monetary damages.

4. Yong and Singa Tax have also breached the Franchise Agreement by failing to return Liberty's Confidential Operations Manual, using and disclosing Liberty's Confidential Information, failing to transfer the telephone number associated with Singa Tax's former Liberty franchise—(408) 688-6236—to Liberty, using that telephone number in association with ABC Tax, and failing to pay at least $30,058.00 in accounts receivable debt owed to Liberty, plus interest.

5. Liberty seeks (a) an immediate injunction prohibiting Defendants from directly or indirectly offering tax preparation services and soliciting Liberty's customers within 25 miles of the boundaries of Yong and Singa Tax's former Liberty franchise territory for two years following the entry of any injunction; (b) an immediate injunction ordering Defendants to cease their use and disclosure of Liberty's trade secrets; (c) compensatory and liquidated damages stemming from Yong and Singa Tax's breaches of contract; (d) compensatory damages stemming from Defendants' and violations of common law; (e) statutory and punitive damages stemming from Defendants' violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*. ("DTSA"); (f) compensatory damages stemming from ABC Tax's tortious interference with the Franchise Agreement; (g) attorneys' fees and costs; (h) such other relief the Court deems necessary and just.

## THE PARTIES

6. Liberty is a Delaware limited liability company with its principal place of business at 500 Grapevine Hwy., #402, Hurst, TX 76054.

7. Yong is a citizen of the State of California, with a last known address of 770 Kiely Blvd., Santa Clara, CA 95051.

8. Singa Tax is a California Corporation with a principal place of business at 5818 Halleck Dr., San Jose, California 95123. Yong incorporated Singa Tax and is Singa Tax's Registered Agent according to records maintained by the Secretary of State of California.

9. ABC Tax is a California Corporation with a principal place of business at 5818 Halleck Dr., San Jose, California 95123. Khanh Le a/k/a Kathy Le ("Le"), a former employee of Yong and Singa Tax's Liberty franchise, is the CEO of ABC Tax and is also the Registered Agent of ABC Tax.

## JURSIDICTION AND VENUE

10. This Court has personal jurisdiction over Yong and Singa Tax because they agreed in the Franchise Agreement that in any suit brought by Liberty, "that in any way relates to or arises out of [the Franchise] Agreement or any of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office..." which is presently in Hurst, Texas.

11. This Court has personal jurisdiction over ABC Tax because Yong is intimately involved in the operations of ABC Tax and could reasonably expect to be haled into Court in Texas for interfering with the Franchise Agreement which specifically stated that the parties agreed to jurisdiction for any suit brought by Liberty "that in any way relates to or arises out of [the Franchise] Agreement or any of the dealings between you and any or all of the Liberty Parties, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office..." which is presently in Hurst, Texas.

12. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

13. This Court has original (federal question) subject matter jurisdiction pursuant to the DTSA, and supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the DTSA claim.

14. This action is properly venued in the Northern District of Texas pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because consented to venue in this District. *Id.*

## FACTUAL BACKGROUND

15. Liberty is a franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States.

16. Liberty owns numerous Trade Secrets and other confidential information, including but not limited to, client lists and files, methods of operation, private customer information, and marketing strategies as well as its confidential Operations Manual, which contains Liberty's highly valuable and guarded trade secrets and confidential information (collectively, "Trade Secrets" and "Confidential Information").

17. Pursuant to the terms of the Franchise Agreement, Liberty discloses its Confidential Information to franchisees and provides guidance and assistance to franchisees.

**The Franchise Agreement**

18. On or about May 25, 2017, Singa Tax entered into the Franchise Agreement with Liberty for a franchise territory known as CA826 (the "Territory"). A copy of the Franchise Agreement is attached hereto as **Exhibit A**.

19. Singa executed the Franchise Agreement on behalf of himself and Singa Tax in his capacity as Singa Tax's President.

20. Yong personally guaranteed the Franchise Agreement, including any debts due to Liberty. Ex. A § 26. Yong personally agreed to abide by the terms of the Franchise Agreement

as an individual and on behalf of his entity, Singa Tax. *Id*.

21. Yong and Singa Tax operated a Liberty franchise at 770 Kiely Blvd., Santa Clara, California pursuant to the Franchise Agreement.

22. Pursuant to the Franchise Agreement, Liberty granted Yong and Singa Tax a license to use its Trade Secrets and Confidential Information and to identify as a Liberty franchise. Liberty also provided Yong and Singa Tax with training in its operation, marketing, advertising, sales, and business systems. Yong and Singa Tax also received a copy of Liberty's confidential operating, marketing, and advertising materials, including its confidential and proprietary Operations Manual containing Liberty's Trade Secrets, which are not available to the public or to anyone who is not part of Liberty's business system.

23. Pursuant to Section 1 of the Franchise Agreement, Yong and Singa Tax were authorized to use Liberty's proprietary tax system (the "Liberty System") and Liberty's trade names and trademarks.

24. Pursuant to Section 4(d) and (g) of the Franchise Agreement, Yong and Singa Tax agreed to pay monthly royalties in the amount of 14% of gross receipts. Ex. A at § 4(d) and (g).

25. Pursuant to Section 4(f) of the Franchise Agreement, Yong and Singa Tax agreed to pay monthly advertising fees to Liberty in the amount of 5% of gross receipts. *Id*. § 4(f).

26. Pursuant to Section 4(h) of the Franchise Agreement, interest on all amounts due and owing by Yong and Singa Tax to Liberty compounds daily at a rate of 12% per annum. *Id.* at § 4(h).

27. Pursuant to Section 9(d) of the Franchise Agreement, Yong and Singa Tax agreed to immediately pay all amounts due and owing to Liberty upon the termination. *Id.* at § 9(d). In Section 9(e) of the Franchise Agreement, Yong and Singa Tax agreed to transfer to Liberty all

telephone numbers used in the Franchised Business.

28.     Under Section 9 of the Franchise Agreement, Yong and Singa Tax agreed to the following actions immediately upon termination or expiration of the Franchise Agreement: (1) return Liberty's confidential Operations Manual; (2) deliver all customer lists, tax returns, files, and records to Liberty; (3) pay to Liberty all amounts owing to Liberty, including damages, costs and expenses, including reasonable attorney's fees; and (4) adhere to all post-termination non-competition and non-solicitation covenants.

29.     Pursuant to Section 10(a) of the Franchise Agreement, Yong and Singa Tax agreed to not directly or indirectly prepare or electronically file income tax returns or offer financial products except in their capacity as a Liberty franchisee during the term of the Franchise Agreement. *Id.* at § 10(a).

30.     Pursuant to Section 10(b) of the Franchise Agreement, Yong and Singa Tax agreed to a post-termination covenant not to compete within the Territory or within twenty-five (25) miles of the boundaries of the Territory for two years following termination or expiration of the Franchise Agreement. *Id.* at § 10(b).

31.     In Section 10(d) of the Franchise Agreement, Yong and Singa Tax agreed that for a period of two years following termination or expiration of the Franchise Agreement, Yong and Singa Tax agreed not solicit the patronage of any person or entity served by any of their Liberty franchise locations for the prior twelve months for the purpose of offering income tax preparation or electronic filing of tax returns. *Id.* at § 10(d).

32.     Yong and Singa Tax also agreed under the Franchise Agreement "not to do any act that is, in Liberty's determination, harmful, prejudicial or injurious to Liberty..." *Id*. at § 10(f).

33. Yong and Singa Tax agreed, "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest," agreed to "waive all defenses to the strict enforcement of Section 10," and agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under ... Sections 9 and 10." *Id*. at § 10(h).

34. Pursuant to Section 12 of the Franchise Agreement, Yong and Singa Tax acknowledged that Liberty's Confidential Information was to be used only in connection with their Liberty franchise, and further agreed to never use or disclose the Confidential Information following the termination or expiration of the Franchise Agreement. *Id.* at § 12(a) and (c).

**Termination of the Franchise Agreement**

35. On or about June 2021, Liberty learned that Yong and Singa Tax had breached the Franchise Agreement by failing to pay debts owed to Liberty of at least $30,058.00, which were more than thirty (30) days past due.

36. On or about June 30, 2021, Liberty notified Yong and Singa Tax of the breach and provided Defendants with the opportunity to cure ("Notice to Cure"). A copy of the Notice to Cure is attached hereto as **Exhibit B**.

37. Yong and Singa Tax failed to cure the breaches identified in the Notice to Cure. As such, Liberty terminated the Franchise Agreement on or about July 12, 2021. A copy of the notice sent to Yong and Singa Tax ("Termination Notice") is attached hereto as **Exhibit C**.

38. The Termination Notice reminded Yong and Singa Tax of, among other things, their post-termination obligation to: refrain from using Liberty's trademarks; transfer all telephone numbers associated with their franchise to Liberty; cease identifying as a franchisee of Liberty; pay Liberty all monies owed; deliver to Liberty all customer lists, tax returns, files and records; deliver to Liberty the Operations Manual; and adhere to the post-termination covenants

not to compete and not to solicit. *Id.*

**Unfair Competition and Breach of Non-Competition and Non-Solicitation Covenants**

39. An Electronic Filing Identification Number (EFIN) is required to file tax returns electronically and to become an authorized IRS e-file provider, otherwise known as an Electronic Return Originator (ERO). Each ERO has a unique EFIN.

40. An EFIN is required to file tax returns electronically and to become an authorized IRS e-file provider / ERO.

41. The IRS periodically publishes all ERO filing data in the United States for a particular tax year ("ERO Database"). The ERO Database includes, *inter alia*, the legal name, trade name, address, application submission date, EFIN and corresponding tax office return count for all active EROs.

42. Recently published ERO data reveals that ABC Tax began transmitting voluminous tax returns from the same address as Singa Tax's former Liberty franchise once Singa Tax's Franchise Agreement terminated.

43. During its last two years as a Liberty franchisee, Singa Tax transmitted 764 tax returns (2020) and 794 tax returns (2021) respectively, according to IRS data.

44. In those same years, ABC Tax transmitted 32 tax returns (2020) and 76 tax returns (2021), respectively.

45. In 2022, following the termination of Singa Tax's Franchise Agreement, ABC Tax suddenly transmitted 812 tax returns from the very same location as Singa Tax's former Liberty franchise. Of course, this location happens to be where Le, ABC Tax's CEO, worked as a Liberty employee for several years.

46. Yong and Singa Tax failed to transfer the telephone number associated with Singa Tax's former Liberty franchise to Liberty. Le and ABC Tax are now using that same telephone number in connection with the services of ABC Tax.

47. Following the termination of the Franchise Agreement, Yong began working for and/or controlling the operations of ABC Tax.

48. Upon information and belief, Yong currently works for and/or controls the operations of ABC Tax.

49. Upon information and belief, Yong and/or Singa Tax disclosed Liberty's Confidential Information, including customer lists and information, to Le, who has used that information to solicit Liberty's customers and transmit tax returns on behalf of ABC Tax.

50. Yong and Singa Tax have also failed to return Liberty's confidential Operations Manual, which contains Liberty's Trade Secrets and Confidential Information, to Liberty.

51. Defendants have failed to pay past due accounts receivable debts due and owing to Liberty in the amount of at least $30,058.00, plus interest

52. As a result of the foregoing, Liberty has suffered both pecuniary damages and irreparable harm to its reputation, goodwill, franchise system, and its Trade Secrets and Confidential Information.

## COUNT I
### *Breach of the Franchise Agreement (Equitable Claim)*

53. Liberty repeats and re-alleges the foregoing paragraphs as if fully sets forth herein.

54. The Franchise Agreement is valid and enforceable.

55. Liberty has performed every obligation and condition required under the Franchise Agreement.

56. Defendants agreed under the Franchise Agreement to, *inter alia*, (a) return Liberty's confidential Operations Manual; (b) deliver all customer lists, customer information, tax returns, files, records and other Confidential Information to Liberty; (c) refrain from using or disclosing Liberty's Confidential Information; (d) refrain from directly or indirectly offering tax preparation services and soliciting Liberty's customers within 25 miles of their former Liberty office through July 2023; and (e) .

57. Yong and Singa Tax breached the foregoing post-termination obligations by (a) failing to return Liberty's Operations Manual; (b) retaining customer lists, information and files from their former Liberty office; and (c) using and disclosing Liberty's Confidential Information in connection with the business of ABC Tax.

58. Yong further breached the Franchise Agreement by (a) operating ABC Tax; (b) soliciting Liberty's customers; and (c) offering and providing tax preparation services at the very same location as her former Liberty franchise within 2 years of the termination of the Franchise Agreement.

59. Yong and Singa Tax's post-termination obligations survive termination of the Franchise Agreement.

60. The foregoing breaches of the Franchise Agreement were and are material.

61. Upon information and belief, these breaches have caused and will continue to cause confusion in the minds of consumers between the services of Liberty and ABC Tax, and pose a threat to the confidentiality and value of Liberty's Trade Secrets and Confidential Information.

62. Liberty has been and will be irreparably harmed by these actions, and monetary damages are an insufficient remedy in that it can only potentially quantify a limited loss of customers, but cannot take into account the continuing irreparable damage to the value of

Liberty's Confidential Information, goodwill, customer loyalty, and its ability to sell franchises, all of which are caused by Yong and Singa Tax's ongoing violations.

63. Unless their wrongful conduct is enjoined, Yong and Singa Tax will continue to breach their continuing post-termination obligations under the Franchise Agreement.

## **COUNT II**
### *Breach of the Franchise Agreement (Monetary Claim)*

64. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

65. The Franchise Agreement is valid and enforceable.

66. Liberty has performed every obligation and condition required under the Franchise Agreement.

67. Under the Franchise Agreement, Defendants were required to: (a) pay all amounts due and owing to Liberty immediately following termination of the Franchise Agreement; (b) refrain from offering tax preparation services and soliciting Liberty's clients within twenty-five miles of boundaries of their former Liberty Territory for a period of two years following termination; (c) immediately return Liberty's confidential Operations Manual and to never use or disclose Liberty's Trade Secrets and Confidential Information following the termination of the Franchise Agreement; (d) operate a Liberty franchise for five years; (e) stop identifying as a Liberty franchisee; (f) transfer all telephone numbers associated with their former Liberty franchise; (g) refrain from leasing or subleasing the location associated with their former Liberty franchise territory to any person or entity who will offer tax preparation services at the location; (h) refrain from inducing any Liberty employee from leaving their employment with Liberty; (i) use reasonable, good-faith efforts to ensure that no tax preparation office operates at the location of their former Liberty franchise for 24 months following termination of the Franchise Agreement; and (j) not engage in acts that are harmful to Liberty.

68. Yong and/or Singa Tax have breached Franchise Agreement by: (a) failing to pay amounts due and owing to Liberty; (b) offering tax preparation services within 25 miles of Defendants' Yong and Singa Tax's former Liberty office, within the non-competition period; (c) failing to return the Operations Manual; (d) disclosing Liberty's Confidential Information to Le and ABC Tax; (e) failing to operate a Liberty franchise for five years; (f) continuing to identify as a former Liberty franchisee; (g) failing to transfer the telephone number associated with their former Liberty franchise, which has resulted in their former employee's use of said telephone number in connection with the business of ABC Tax; (h) upon information and belief, subleased the lease for their former Liberty franchise to Le and/or ABC Tax; (i) inducing Le to leave her employment with Liberty; and (j) engaging in acts that are harmful to Liberty.

69. As a direct and proximate result of the foregoing breaches, Liberty has incurred, and will continue to incur, substantial losses in an amount to be proven at trial.

70. Also as a direct and proximate result of the foregoing breaches, Yong and Singa Tax are obligated to pay minimum royalties of $11,000 pursuant to Section 4(d)(iii) of the Franchise Agreement.

## COUNT III
*Violation of the Defend Trade Secrets Act of 2016*

71. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

72. The DTSA provides a private civil cause of action for misappropriation of a trade secret that is related to a product or service.

73. Liberty owns numerous Trade Secrets that implicate interstate commerce, including but not limited to, client lists and files, as well as its confidential Operations Manual, which contains Liberty's highly valuable and guarded Trade Secrets and Confidential Information.

74. The Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

75. The Trade Secrets are not readily ascertainable by the public as they are disclosed only to franchisees in the operation of the franchised business pursuant to a franchise agreement.

76. Liberty's franchisees are licensed to use the Trade Secrets only pursuant to the protective terms of Liberty's franchise agreements, and only in connection with the operation of a Liberty franchise.

77. Liberty disclosed the Trade Secrets to Yong and Singa Tax pursuant to the terms of the Franchise Agreement and for the sole purpose of using that information to operate a Liberty franchise.

78. Liberty has taken extensive measures to preserve and protect the Trade Secrets for the purpose of maintaining a competitive advantage, including, among other things (a) requiring franchisees to agree to never use the Trade Secrets for any purpose other than operating a Liberty franchise; (b) requiring franchisees to return the confidential Operations Manual and deliver the Trade Secrets and Confidential Information to Liberty immediately upon termination or expiration of the Franchise Agreement; and (c) enforcing Liberty's interest in the Trade Secrets by initiating legal recourse against those who misappropriate the Trade Secrets.

79. Pursuant to Section 9(i) of the Franchise Agreement, Yong and Singa Tax agreed that upon termination of the Franchise Agreement, they would never use, disclose, or permit the use or disclosure of Liberty's Trade Secrets and Confidential Information in any manner whatsoever, and that they would return all customer information and Liberty's confidential Operations Manual to Liberty upon termination.

80. Yong and/or Singa intentionally and without Liberty's permission or authorization used and/or disclosed Liberty's Trade Secrets to Le and ABC Tax for their own economic benefit and with the intention and knowledge that their conduct would irreparably injure Liberty's goodwill and reputation.

81. Defendants have used and/or disclosed Liberty's Trade Secrets without Liberty's permission or authorization, with knowledge that it did not have permission or authorization to use said Trade Secrets. Defendants did so for its own economic benefit and with the knowledge that its conduct would irreparably injure Liberty's goodwill and reputation.

82. As a direct and proximate result of Defendants' willful, improper, and unlawful disclosure and use of Liberty's trade secrets, Liberty has suffered and will continue to suffer irreparable injury.

83. Pursuant to 18 U.S.C. § 1836(b)(3)(A), Defendants' actual and threatened use and misappropriation of Liberty's Trade Secrets should be enjoined from further disclosure or use of Liberty's Trade Secrets.

84. Defendants' conduct in misappropriating the Trade Secrets was and continues to be willful and malicious - warranting an award of exemplary damages in accordance with 18 U.S.C. § 1836(b)(3)(C) and an award of reasonable attorneys' fees in accordance with 18 U.S.C. § 1836(b)(3)(D).

## COUNT IV
*Unjust Enrichment*

85. Liberty restates and re-alleges the foregoing paragraphs as if fully set forth herein.

86. Liberty is entitled to damages under the alternative theory of unjust enrichment.

87. Liberty conferred a benefit on Yong and Singa Tax by disclosing the Trade Secrets and Confidential Information to Defendants.

88. Yong and Singa Tax have been enriched by their use and/or disclosure of the Trade Secrets and Confidential Information at the expense of Liberty.

89. Yong and Singa Tax are not entitled to use or disclose the Trade Secrets and Confidential Information.

90. It is against equity and good conscience to permit Yong and Singa Tax to retain all amounts in which they were enriched by virtue of their continued possession over and use of Liberty's Trade Secrets and Confidential Information and unlawful competition with Liberty.

91. Yong and Singa Tax have accepted and retained the benefit of receiving the Trade Secrets and Confidential Information without paying for its value and using the information for their own benefit.

92. Liberty will continue to suffer damages in an amount to be proven at trial, for which Defendants are liable, in association with Yong and Singa Tax's unjust enrichment.

## COUNT V
*Conversion*

93. Liberty restates and re-alleges the foregoing paragraphs as if fully set forth herein.

94. Yong and Singa Tax were authorized to use and possess Liberty's property, only while operating their former Liberty franchise pursuant to the Franchise Agreement. Specifically:

    A.    Liberty owns and has the right to possess the following properties by virtue of the Franchise Agreement: Any copies, including electronic copies and media, of lists and other sources of information containing the names, addresses, e-mail addresses, or phone numbers of customers who patronized the Franchised Business;

    B.    Any copies, including electronic copies and media, containing, customer tax returns, files, and records; and

    C.    The copy of the Operations Manual and any updates.

(collectively, the "Property").

95. ABC Tax was never authorized to use Liberty's Property.

96. Pursuant to Section 9 of the Franchise Agreement, upon termination of the Franchise Agreement, Defendants were required to transfer and deliver the Property to Liberty.

97. Defendants have not returned the Property to Liberty. As such, Defendants are intentionally interfering with Liberty's use and enjoyment of the Property.

98. Defendants have together converted the Property for their financial gain through the solicitation of Liberty's customers to compete directly with Liberty.

99. Defendants' interference with the Property has deprived Liberty of its possession and use of the Property.

100. As a direct and proximate result of Defendants' conversion of Liberty's property, Liberty has suffered damages and will continue to suffer damages, for which Defendants is liable, until the aforementioned property is delivered and returned to Liberty.

## COUNT VI

*Tortious Interference with Franchise Agreement and Business Relationships*

101. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

102. The Franchise Agreement is valid and enforceable.

103. Upon information and belief, at all relevant times ABC Tax knowledge of the existence of the Franchise Agreement and its terms.

104. Liberty has valid and existing relationships with its customers.

105. Despite its knowledge of Franchise Agreement and Liberty's relationship with its customers, ABC Tax has knowingly interfered with that agreement and those relationships by facilitating Yong's unlawful competition and disclosure of Liberty's Confidential Information.

106. As a direct and proximate result of ABC Tax's interference with the Franchise

Agreement and business relationships, Liberty has been damaged.

107. Liberty will continue to suffer irreparable harm unless the Court enjoins ABC Tax from further interference with the Franchise Agreement and business relationships.

## PRAYER FOR RELIEF

WHEREFORE, Liberty prays for judgment against Defendants as follows:

1. For the following injunctive relief:

   A. Enjoin Yong and Singa Tax from directly or indirectly offering tax preparation services and soliciting Liberty's customers within twenty-five (25) miles of the boundaries of their former Liberty franchise Territory for two years following the entry of any injunction;

   B. Order Defendants to cease use and disclosure of Liberty's Confidential Information and Trade Secrets, including Liberty's confidential Operations Manual;

   C. Order Defendants to return all Confidential Information of Liberty's that is in their possession or control; and

   D. Order to Defendants to transfer the telephone number associated with the former Liberty franchise—(408) 688-6236—to Liberty.

2. For breach of contract damages, including but not limited to future royalties in the amount of $11,000, payment of debts owed by Defendants to Liberty in the amount of at least $30,058.00 (representing unpaid accounts receivable) and liquidated damages pursuant to Section 10(c) of the Franchise Agreement in an amount to be determined at trial;

3. For compensatory and, if applicable, punitive damages arising from Defendants' common law violations;

4. For statutory and punitive damages stemming from Defendants' violation of the DTSA;

5. For a monetary award against all Defendants for Liberty's reasonable attorneys' fees and costs, in an amount to be proven at trial;

6. For pre- and post-judgment interest; and

7. For such other relief as the Court deems just and appropriate.

Dated: November 3, 2022                                    Respectfully submitted,

       /s/ *Cristina Guerrero*
Cristina Guerrero (State Bar # 24058860)
**GORDON REES SCULLY MANSUKHANI, LLP**
1900 West Loop South, Suite 1000
Houston, Texas 77027
Telephone: 713-490-4850 or 713-228-7019
cxguerrero@grsm.com

*Counsel for JTH Tax LLC d/b/a Liberty Tax Service*

## **VERIFICATION**

Geoff Knapp, being duly sworn, deposes and says:

I am Regional Director for JTH Tax LLC d/b/a Liberty Tax Service ("Liberty"). I have read the foregoing Verified Complaint, know the contents thereof, and state the allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Regional Director at Liberty, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Liberty's records and conversations with Liberty's employees.

Dated: October 31, 2022

*DocuSigned by:*

*Geoff Knapp*
BABABAC50B57469

Geoff Knapp
Regional Director for JTH Tax LLC